CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 4 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 7:05CR00038 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. Glen E. Conrad |
| GREGORY TODD AKERS | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

This case is before the court on defendant's motions to suppress evidence seized in two separate searches from his home pursuant to a search warrant and from his person following a traffic stop of his vehicle. The defendant contends that the searches violated his rights under the Fourth Amendment because the search warrant was not supported by probable cause and law enforcement lacked either reasonable suspicion or probable cause to justify the search and seizure of the defendant's person. For the reasons stated below, the court will deny defendant's motions to suppress.

## FACTUAL BACKGROUND

On March 30, 2005, James D. Epperly, a Christiansburg Police Officer assigned to the New River Recreational Drug Task Force as a Special State Police Officer, applied to a county magistrate for a warrant to search the defendant's residence, the defendant's person, and all vehicles and buildings on the defendant's property. Epperly submitted an affidavit in support of the search warrant. In the affidavit, Epperly stated that a confidential, reliable informant had stated that the defendant was using multiple cases of matches, chemicals, and pseudoephedrine

1

and that the informant had noticed the odor of a working methamphetamine lab at the defendant's residence at 797 Duncans Chapel Road in Floyd County during the month of February. In addition, the informant had seen finished methamphetamine and thought that the defendant cooked methamphetamine every day at this location, and had done so for some time. As to the reliability of the information, Epperly stated that the informant had provided information to agents on numerous occasions, and that the information had resulted in arrests and convictions. The magistrate concluded that the information in the affidavit established probable cause to believe that evidence of illegal drug activity would be found at the residence, and therefore issued a search warrant for the premises.

Law enforcement officers subsequently executed the search warrant. The officers discovered firearms, records, and a small amount of methamphetamine.

In the late evening hours of February 13, 2005, Christopher Sparks, of the Virginia State Police, stopped the defendant on Route 221 for traveling 43 miles per hour in a 25 miles per hour zone. When Sparks approached the vehicle, he noticed a pistol on the dash board, which the defendant stated he owned. Sparks requested backup and called a tow truck for the vehicle, because he determined the vehicle could not be legally operated. After the backup arrived, Sparks issued summonses to the defendant for several traffic infractions. The defendant and the passenger of the car were patted down as they got out of the car. A pistol, methamphetamine, marijuana, and a bag with scales were discovered on the person of the passenger of the vehicle. During the pat-down of the defendant, a pocket knife and a pipe with marijuana residue were found. The defendant was arrested, and during a search subsequent to the arrest, $1917 in cash was seized.

On May 26, 2005, the defendant was indicted by a grand jury for the Western District of Virginia for conspiracy to distribute more than 500 grams of methamphetamine, possession with intent to distribute a detectable amount of methamphetamine, use of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by an unlawful user of a controlled substance. A grand jury returned a superceding indictment against the defendant on July 21, 2005, which added the counts of possession with the intent to distribute a detectable amount of methamphetamine, use of a firearm in furtherance of a drug trafficking crime, and use of a dangerous weapon to assault or impede a Drug Enforcement Administration agent in the performance of official duties.

## **DISCUSSION**

The defendant has moved to suppress all evidence and statements obtained as a result of the search warrant and the searches of his person. The defendant challenges the validity of the search warrant, arguing that the information in the affidavit was insufficient to support a finding of probable cause because the information was stale. In addition, he contends that the pat-down after his traffic stop was without lawful justification because the state trooper did not have reasonable suspicion that would justify a stop and frisk under Terry. The defendant also argues that the search incident to arrest was invalid because there was no probable cause to arrest the defendant.

I.

The defendant has moved to suppress all evidence and statements obtained as a result of the search warrant. The defendant challenges the validity of the search warrant, claiming that it was not supported by probable cause because the information it was based on was stale and

3

conclusory.

A magistrate's finding of probable cause must be paid "great deference." Illinois v. Gates, 462 U.S. 213, 236 (1983). When reviewing a magistrate's finding of probable cause, a district court must "determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984). Probable cause exists when there are sufficient facts for a prudent person to believe that contraband or evidence of a crime will be found in the place to be searched. Ornelas v. United States, 517 U.S. 690, 696 (1996).

A warrant is valid if "facts so closely related to the time of the issue of the warrant ... justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210-11 (1932). If a warrant is issued upon stale probable cause, evidence seized is not admissible in a criminal trial. United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984). Staleness of probable cause "cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." Id. (quoting United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972)). The court must instead look at the totality of circumstances, including the type of activity alleged, the length of the activity, and the type of property to be seized. McCall, 740 F.2d at 1336. When the criminal activity in question is of "a protracted and continuous nature," probable cause is not rendered stale by the passage of time. United States v. Farmer, 370 F.3d 435, 439 (4th Cir. 2004) (quoting Johnson, 461 F.2d at 287). Long-term drug trafficking operations are examples of criminal activities that are continuous in nature. See Farmer, 370 F.3d at 439.

In this case, the defendant contends that a warrant based upon information gathered

4

during the month of February failed to provide adequate probable cause for a warrant issued on March 30th. The defendant relies upon the Virginia Supreme Court case of <u>Stovall v. Commonwealth</u>, 189 S.E.2d 353 (1972). In that case, the court held that the information contained in the affidavit upon which a search warrant was issued was too remote in time and too conclusory to establish probable cause. First, the court found that information that one was illegally in possession of drugs on a certain date was not sufficient to establish that the same person possessed illegal drugs seventy-two days later. The court also found that the information that a large quantity of marijuana was stored at the defendant's residence was insufficient to establish probable cause, and that "there should have been set forth some factual allegation which, when added to the earlier information, would have led the reasonable mind to believe that criminal conduct probably continued until the time the search warrant issued." <u>Stovall</u>, 189 S.E.2d at 71 (internal citations omitted).

The facts in this case are distinguishable from those in <u>Stovall</u>. The confidential informant in this case referred to an "active methamphetamine clandestine laboratory," involving cases of matches, chemicals, and pseudoephedrine. In addition, the informant reported that the defendant had employees and that the informant had smelled "the heavy noxious odor of a working MCL [methamphetamine clandestine laboratory]." These statements provided sufficient factual details to establish probable cause to believe that criminal conduct was continuing from February, when the activities were observed, until the issuance of the warrant in March. Criminal activities that are of a continuous nature depend less on the recency of information than other criminal activities. <u>Farmer</u>, 370 F.3d at 439. An attachment to the affidavit for the search warrant indicated that the target of the warrant "cooks everyday [sic] at this location, and has for

5

sometime [sic]." Like the counterfeiting operation described in Farmer, a methamphetamine lab, involving equipment and supplies, is unlikely to have been abandoned. In addition, the affidavit described "owe sheets" and records of financial transactions relating to the sale of methamphetamine, the types of records that "are not ordinarily destroyed or moved about from one place to another." Farmer, 370 F.3d at 439 (quoting United States v. Rhynes, 196 F.3d 207, 234 (4th Cir. 1999), which referred to books, records, notes, ledgers, and proceeds of drug sales and address books relating to drug sales as business records). Due to the continuing nature of a methamphetamine lab, the probable cause supporting the search warrant was not stale and the warrant was valid.

II.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search and seizure is presumptively unlawful, and the government therefore bears the burden to prove that the search and seizure falls into one of the established exceptions. See United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005).

One such exception to the warrant requirement is that an officer may stop an individual for further investigation under Terry v. Ohio, 392 U.S. 1 (1968), when he reasonably believes that criminal activity may be afoot. United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004). A court examines such a stop under the totality of the circumstances. Id. at 805. Once a Terry stop is authorized by such reasonable suspicion, an officer may conduct a protective frisk of the person of a suspect if he believes the person may be armed and dangerous. Id. at 807. An officer may not, however, conduct a protective search for safety unless there is reasonable suspicion to

6

support the investigatory stop. United States v. Burton, 228 F.3d 524, 528 (4th Cir. 2000).

Reasonable suspicion is not required for an officer to order a driver out of his vehicle. After a lawful traffic stop has occurred, a police officer may order a driver out of his vehicle "as a matter of course." Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977). This rule is based on the balancing of the public interest in officer safety and the intrusion into a driver's personal liberty. Id. at 109. Ordering a driver out of a vehicle that has been lawfully stopped is a "de minimis" intrusion, while the danger inherent to an officer in a traffic stop is "legitimate and weighty." Id. at 110. A frisk or "pat down," however, involves "substantially more" of an intrusion on individual liberty than merely requiring an individual to exit a vehicle. United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998). Such a search cannot be justified by a generalized concern for officer safety, and requires justification by "a reasonable articulable suspicion of criminal activity and a legitimate concern for officer safety." Id. at 169 & n.*.

Reasonable suspicion is more than an "inchoate and unparticularized suspicion or 'hunch,'" and the Government has the burden of articulating facts to support reasonable suspicion. United States v. Burton, 228 F.3d 524, 527-28 (4th Cir. 2000) (quoting Terry, 392 U.S. at 27). Reasonable suspicion is determined by considering the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989).

In this case, the Government used three possible justifications for the pat-down of the defendant. First, Officer Sparks stated that there was a general policy to pat down anyone who gets out of his vehicle during a traffic stop. Second, the Government referred to Sparks' knowledge of the defendant's "reputation." Third, Sparks cited a concern that since one weapon had been found, the defendant might have other weapons.

7

A policy of patting down any person who exits his vehicle is not valid because such a pat-down is not supported by reasonable, particularized suspicion. See United States v. Sakyi, 160 F.3d at 169 & n.*. In order for the search of the defendant to be valid, it must be supported by reasonable, articulable suspicion as to that individual. The Government referred to two factors as a basis for this type of suspicion.

A prior criminal record is not sufficient, as a single factor, to create reasonable suspicion. United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997). Sparks' knowledge of the defendant's "reputation," a less concrete factor than an existing criminal record, was not sufficient to create reasonable suspicion unless combined with other factors.

The only other individualized factor cited by the Government that could create reasonable suspicion was Sparks' discovery of the firearm on the dashboard. The Supreme Court has relied on the discovery of a weapon to support a reasonable belief that an officer's safety is in danger. In Michigan v. Long, officers stopped a driver for erratic driving and speeding, and observed a hunting knife on the floorboard of the car. 463 U.S. 1032, 1035-36 (1983). The officers then frisked the driver and searched the interior of the car. Id. at 1036. The Court found that the officers were justified in their search of the passenger compartment to uncover weapons, because they had an articulable and objectively reasonable belief that Long was dangerous due to finding a large knife on the interior of the car. Id. at 1051. The Court also noted, however, that the same analysis "would apply to justify the search of Long's person that was conducted by the officers after the discovery of the knife."[1] Id. at 1051 n.15. See also United States v. Dart, 747 F.2d 263,

---

[1] The Court also noted that the fact that the knife was legally in Long's possession did not affect the validity of a Terry search. Michigan v. Long, 463 U.S. 1032, 1052 n.16 (1983). Although Akers was lawfully in possession of the pistol, therefore, the validity of the pat-down

8

269 n.6 (4th Cir. 1984) (citing United States v. Johnson, 506 F.2d 674, 676 (10th Cir. 1974), and noting that finding a sawed-off shotgun inside a car, while "the discovery that the object seen was in fact a sawed-off shotgun gave reason to search the vehicle for further weapons," was distinguishable from finding an old handgun in an abandoned garage). In addition, the Fourth Circuit found that a protective search after a traffic stop was valid, even after a driver had voluntarily produced two knives in response to the officer's inquiry as to whether he had any guns or knives. United States v. Wyatt, 84 Fed. App'x. 318, 319 (2004) (unpublished). Similarly, the Court has found that cooperation of a suspect with officers during a Terry stop does not invalidate concerns about that individual's dangerousness. United States v. Holmes, 376 F.3d 270, 278 (4th Cir. 2004). Although the defendant cooperated with the requests of Sparks and had surrendered the firearm found on the dashboard, a legitimate concern for officer safety remained due to a reasonable belief that the defendant might have access to other weapons.[2]

In combination, the defendant's reputation and the discovery of a firearm on the dashboard created sufficient reasonable, particularized suspicion to justify a pat-down search of the defendant for officer safety. The marijuana residue found during the pat-down search was a

---

for officer safety was not affected.

[2] The defendant has referred to the length of time elapsing between the initial stop and Sparks' pat-down of Akers as casting doubt upon Sparks' suspicion and lawful justification for the pat-down. Due to the dangerousness of traffic stops to police officers, the Fourth Circuit has stated that, "[i]n recognition of the extraordinary dangers to which officers are exposed during such encounters, the Court has consistently accorded officers wide latitude to protect their safety." See, e.g., United States v. Stanfield, 109 F.3d 976, 977 (4th Cir. 1997) (finding that a substantial government interest in officer safety outweighed minimal privacy interest of suspect in interior of his vehicle when vehicle had heavily tinted windows). The court therefore finds that Sparks' decision to wait for backup before conducting pat-down searches of the vehicle's occupants was reasonable.

9

valid basis for arrest, as possession of less than one-half ounce of marijuana is a Class 1 misdemeanor, punishable by up to twelve months in jail. See Va. Code Ann. § 18.2-248.1, § 18.2-11 (2005). Therefore, evidence seized as a result of the arrest is admissible.

## CONCLUSION

Because evidence was seized pursuant to a valid search warrant and law enforcement officers had reasonable articulable suspicion to conduct a pat-down of Akers for officer safety, the defendant's motions to suppress will be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 13th day of September, 2005.

_____
United States District Judge