CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

April 10, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ E. Jones**
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|  | ) | **Criminal Action No. 7:05-CR-00038** |
| v. | ) | |
|  | ) | |
| GREGORY TODD AKERS, | ) | **By: Hon. Robert S. Ballou** |
|  | ) | **United States District Judge** |
| Defendant. | ) | |
|  | ) | |

**MEMORANDUM OPINION**

Defendant, Gregory Todd Akers, was found guilty following a bench trial in state court of felony obstruction of justice and now faces revocation of his supervised release because of this new criminal conviction. Akers maintains his innocence and intends to contest the supervised release violation on the grounds that he has not committed a federal or state criminal offense. To this end, Akers has provided notice that he intends to call five witnesses at the supervised release violation hearing, all of whom will testify about the obstruction of justice charge. The Government maintains that the doctrine of collateral estoppel precludes Akers not only from challenging that he committed the criminal offense, but also from disputing that his conduct constituted a felony. The Government, therefore, has moved to quash the witness subpoenas, or alternatively, to exclude witness testimony about the state offense as cumulative and irrelevant. Dkt. 85. I conclude that the state conviction does not have the far-ranging preclusive effect the Government suggests and **DENY** the motion to quash the subpoenas or otherwise broadly to limit their expected testimony.

I.     **Background**

In October 2005, Akers pled guilty in this Court to three counts of a seven-count indictment involving the distribution of drugs and illegal possession of firearms.[1] Dkts. 40–42. He was sentenced to 223 months incarceration and 5 years supervised release. Dkt. 45. The sentence was later reduced to 211 months incarceration. Dkt. 51. On December 20, 2020, Akers was released and started his term of supervised release. Dkt. 72 at 1.

Akers did well on supervised release, aside from one positive drug test, until late 2024. On September 8, 2024, the Floyd County Sheriff's Office met with Akers's neighbor, Tommy Branscome, regarding an incident between the two men. *Id*. at 2. Branscome claimed Akers threatened to stab or shoot him. *Id*. The Floyd County Sheriff's Office arrested Akers and charged him with misdemeanor assault and trespass after forbidden. *Id*. Akers was released and promptly reported the charges to the probation office as required by his conditions of supervised release. *Id*. The probation office issued a violation report to the court requesting that no action be taken until after adjudication of the state charges, and the Court granted that request. *Id*. Trial on the misdemeanor charges was set for December 19, 2024. *Id*. Branscome was set to testify at trial against Akers at trial. *Id*.

According to Branscome, on December 18, the night before trial, Akers came to Branscome's home and threatened to kill him if he appeared in court the next day. *Id*. Based on these allegations, Floyd County arrested Akers and a grand jury indicted him for felony obstruction of justice. *Id*. In early January 2025, at probation's request, this Court issued a warrant for Akers's arrest, alleging that Aker's threats to Branscome violated the conditions of

---

[1] Akers pled guilty to Count One: conspiracy to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846, Count Three: possession of a firearm during and in relation to an in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and Count Seven: assaulting a federal agent with a dangerous weapon, in violation of 18 U.S.C. § 111(b).

release. Dkt. 52. On July 1, 2025, Akers stood trial for felony obstruction of justice. Dkt. 81-3.

During the bench trial, Akers testified in his own defense and called two witnesses. Dkt. 81 at 2.

After consideration of the evidence, the Floyd County Circuit Court convicted Akers of felony

obstruction of justice, and on October 14, 2025, sentenced Akers to five years' incarceration with

two years five months suspended. *Id*. at 103; Dkt. 72 at 3. Also on that date, Akers pled guilty to

a probation violation and was sentenced to five years' incarceration with four years five months

suspended on the probation violation. Dkt. 81-5 at 1–2.

Akers is now back before this court on a petition to revoke his supervised release for

violating mandatory condition #2, which directs that he "shall not commit another federal, state,

or local crime." *Id*. at 3. The final revocation hearing is scheduled for April 20, 2026. Dkt. 103.

In his sentencing memorandum, Akers provided notice of his intention to subpoena five

witnesses, most of whom testified at the state trial. Dkt. 82 at 7. In response, the Government

moved to quash witness subpoenas. Dkt. 85. The Government asserts that the doctrine of

collateral estoppel precludes Akers from relitigating issues decided at his state criminal trial.

Dkts. 81, 85. The Government argues that because the subject of the proposed witness testimony

is precluded, the subpoenas should be quashed under Rule 17 or Federal Rule of Evidence 403,

as compliance with the subpoenas would be unreasonable and oppressive, and the evidence is

cumulative and immaterial. Dkt. 85. Akers argues that collateral estoppel does not apply against

a criminal defendant, and that he retains the right to contest the violation, despite the state

conviction, under the Federal Rule of Criminal Procedure Rule 32.1. Dkt. 92.

## II.     Legal Standard

Revocation of supervised release is not a punishment for criminal conduct but a sanction

for the defendant's breach of the Court's trust. *See* U.S.S.G. ch. 7, pt. C, introductory cmt.

3

("[T]he sentence imposed upon revocation should be tailored to address the failure to abide by the conditions of the court-ordered supervision; imposition of an appropriate punishment for new criminal conduct is not the primary goal of a revocation sentence."). Although defendants may contest an alleged violation, they do not enjoy the "full panoply" of due process rights that a criminal defendant may exercise at trial. *United States v. Ward*, 770 F.3d 1090, 1098 (4th Cir. 2014) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Rule 32.1 provides limited due process rights for defendants at a final revocation hearing. Fed. R. Crim. P. 32.1. Relevant here, these rights include an opportunity to (1) present evidence (2) question adverse witnesses unless the interest of justice does not require witness appearance and (3) the opportunity to make a statement and present any information in mitigation. Fed. R. Crim. P. 32.1(b)(2).

Final revocation hearings proceed in two stages. First, the Court must determine whether the preponderance of the evidence shows that the defendant violated a condition of release. 18 U.S.C. § 3583(e). The condition at issue here requires "that the defendant not commit another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3583(d). Next, if the Court finds that the defendant violated the condition, the Court "should conduct an individualized assessment, taking into consideration the grade of violation, to determine whether to revoke supervised release." U.S.S.G. § 7C1.3(b). "The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is based on the defendant's actual conduct." U.S.S.G. § 7C1.1 cmt. n.1.

### III.   Discussion

The issue here is whether the state conviction for felony obstruction precludes Akers from maintaining his innocence at the supervised release hearing and introducing evidence

challenging his criminal guilt. The Government seeks to quash the witness subpoenas or, alternatively, exclude witness testimony, arguing that collateral estoppel precludes Akers from relitigating the Floyd County conviction. Dkt. 81, 85. Akers argues that the state conviction has no preclusive effect and is admissible at the violation hearing only as evidence that he committed a criminal offense. Dkt. 92. Akers reasons that nonmutual collateral estoppel should not apply against criminal defendants, and that he is entitled to present evidence and question witnesses within the confines of Rule 32.1. *Id*.

A.  Collateral Estoppel

Collateral estoppel originally developed in civil cases and precludes re-litigation of issues determined in a prior cause of action. *Parklane Hosiery v. Shore*, 439 U.S. 322, 326 n.2 (1979).[2] The doctrine promotes judicial economy by barring re-litigation of a decided issue. *Id*. at 326. Collateral estoppel can apply in criminal cases but should be applied "with realism and rationality" to protect a criminal defendant's due process rights. *Ashe v. Swenson*, 397 U.S. 436, 444 (1970); *United States v. Ruhbyan*, 325 F.2d 200, 201 (4th Cir. 2003) ("For criminal purposes, the doctrine of collateral estoppel derives from the Fifth Amendment's guarantee against double jeopardy." (citing *Ashe*, 397 U.S. at 445)). The Supreme Court recently reaffirmed the use of collateral estoppel in criminal cases but did not address its applicability against a defendant by a different prosecuting authority — nonmutual[3] collateral estoppel. *Bravo-Fernandez v. United*

---

[2] Collateral estoppel applies only if (1) the issue was previously adjudicated (2) the issue was actually determined (3) the issue was necessary to the decision (4) the prior resulting judgment was final and valid and (5) the parties had a fair opportunity to litigate in the prior proceeding. *United States v. Ruhbayan*, 325 F.3d 197, 202 (4th Cir. 2003).

[3] Nonmutual collateral estoppel is at issue, because the Government was not a party to the Commonwealth of Virginia's prosecution of Akers for felony obstruction of justice. *See United States v. Smith*, 446 F.2d 200, 202 (4th Cir. 1971) ("The federal government is neither the same as nor in privity with the state of Virginia.").

*States*, 580 U.S. 5, 7–8 (2016) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same parties* in any future lawsuit.") (quoting *Ashe*, 397 U.S. at 445) (emphasis added)).

Nonmutual collateral estoppel does not apply against the government in a criminal case. *Standefer v. United States*, 447 U.S. 10, 25 (1980). As applied against criminal defendants, the Fourth Circuit has not addressed the issue directly but has held that "nonmutual collateral estoppel has no application in criminal sentencing." *United States v. Pierce*, 409 F.3d 228, 234 (4th Cir. 2005).

Other federal courts have routinely held that nonmutual collateral estoppel does not apply against criminal defendants. *United States v. Pelullo*, 14 F.3d 881, 889–898 (3d Cir. 1994) (holding that the defendant's prior conviction could not be used as collateral estoppel to establish a predicate offense in trial before a second jury); *United States v. Musgrave*, 483 F.2d 327, 332 (5th Cir. 1973) (addressing res judicata asserted against the government, but holding that "[a] judgment in a criminal case operates as res judicata in a second criminal case only where the parties to both proceedings are identical."); *Pena-Cabanillas v. United States*, 394 F.2d 785, 787 (9th Cir. 1968) (citing *United States v. Rangel-Perez*, 179 F. Supp. 619, 625 (D.C. Cal. 1959) (requiring mutuality to apply collateral estoppel against a criminal defendant)); *United States v. Gallardo-Mendez*, 150 F.3d 1240, 1246 (10th Cir. 1998) ("[T]he government may not use a judgment following a plea of guilty to collaterally estop a criminal defendant from relitigating an issue in a subsequent criminal proceeding."); *United States v. Harnage*, 976 F.2d 633, 636 (11th Cir. 1992) ("[T]he government may not collaterally estop a criminal defendant from relitigating an issue decided against the defendant in a different court in a prior proceeding."); *see also Ashe*, 397 U.S. at 464–65 (Burger, J., dissenting) ("[C]ourts that have applied the collateral-estoppel

concept to criminal actions would certainly not apply it to both parties . . . if Ashe had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the identification issue at the second trial.").

I find nonmutual collateral estoppel inapplicable to this case. The weight of persuasive sister circuit authority counsels this result. Additionally, the Fourth Circuit has refused to apply the doctrine in criminal sentencing, which has significant similarities to supervised release revocation hearings, including the Government's burden of proof and inapplicability of the Rules of Evidence. *See* Fed. R. Evid. 1101(d)(3).

### B.  Preclusive Effect

The inquiry does not end with the inapplicability of nonmutual collateral estoppel as some courts, without invoking collateral estoppel, have refused to allow a releasee to challenge, at a supervised release revocation hearing, the validity of a conviction upon which a violation is based. *See United States v. Petlock*, 843 F. App'x. 441, 444 (3d Cir. 2021); *United States v. Lustig*, 555 F.2d 751, 753 (9th Cir. 1977); *United States v. Engles*, 779 F.3d 1161, 1162–63 (10th Cir. 2015); *United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996). In *Morrissey*, which details the procedural rights later captured in Fed.R.Crim.P. 32.1, the Supreme Court noted that "a parolee[4] cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." 408 U.S. at 490; *see also Carchman v. Nash*, 473 U.S. 716, 732 (1985) ("[T]he factual issue of guilt of the probation

---

[4] Doctrine addressing parole and probation proceedings may generally be applied to supervised release proceedings. *United States v. Perkins*, 67 F.4th 583, 614 (4th Cir. 2023) ("[P]robation and supervised release are nearly identical in form."); *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999) ("[P]arole and supervised release are 'analogous contexts.'"); *see also United States v. Haymond*, 588 U.S. 634, 657–58 (2019) (Breyer, J., concurring) ("the role of the judge in a supervised-release proceeding is consistent with traditional parole.").

violation is conclusively established by the convictions leading to incarceration in the sending State."). Before the enactment of Rule 32.1, the Fourth Circuit held that "proof of a conviction introduced at a [parole] revocation hearing precludes any attempt to prove that the crime was not committed." *Pope v. Chew*, 521 F.2d 400, 404 (4th Cir. 1975). Although these decisions do not speak in terms of collateral estoppel, the impact is to give a conviction for the violation offense preclusive effect.

State court convictions are presumptively valid and should be afforded respect according to notions of federalism and comity. *United States v. Palmer*, 159 F.4th 221, 228 (4th Cir. 2025). Similarly, finality and judicial economy are weighty interests in the criminal justice system. *See Rangel-Perez*, 179 F. Supp. at 626 (holding that collateral estoppel applies to a prior alienage determination based on considerations of judicial economy). Despite these considerations, I find that the text of 18 U.S.C. § 3583 and the Sentencing Guidelines as well as due process considerations which limit the application of collateral estoppel also prevent this Court from giving preclusive effect to Akers's state conviction.

### 1. Statutory Text

The text of 18 U.S.C. § 3583(e) which governs the revocation of supervised release requires that this Court consider Akers's conduct, not his conviction. The Court may revoke supervised release "if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). Akers is accused of violating mandatory condition #2, which states that he must not "*commit* a federal, state, or local offense while on supervision." 18 U.S.C. § 3583(d) (emphasis added). The statute requires, therefore, that to find a violation, this Court must determine whether Akers actually committed a federal,

8

state, or local offense, not whether he was convicted of such an offense. The provision requires

consideration only of Akers's actual conduct.

### 2. *The Sentencing Guidelines*

The Sentencing Guidelines depend on actual conduct even more clearly. Although

Application Note 1 applies only to determination of the violation grade, application to this case

illustrates its incompatibility with preclusion. *See* U.S.S.G. § 7C1.1 cmt. n.1. Application Note 1

states unequivocally that "[t]he grade of violation does not depend upon the conduct that is the

subject of criminal charges *or of which the defendant is convicted in a criminal proceeding*.

Rather, the violation is to be based on the defendant's *actual conduct*." *Id*. (emphasis added).

Giving preclusive effect to the state felony conviction would preclude Akers from arguing that he

did not commit a felony and would likewise prevent him from arguing that his actual conduct

was no more serious than a misdemeanor – a Grade C violation under the Guidelines. Applying

preclusive effect would pre-determine that the violation grade is at least Grade B. And, in

determining whether the conduct is a Grade A or Grade B violation, Akers's actual conduct still

would not be considered, because determination of a "crime of violence" applies the categorical

approach, regardless of the facts of the instant offense. *United States v. Doctor*, 958 F.3d 226,

234 (4th Cir. 2020). Therefore, applying preclusive effect to the conviction in this particular case

would prevent the Court from assessing Akers's actual conduct in determining the violation

grade for purposes of determining the sentencing guidelines. Application Note 1 does not allow

for such a result.

Because both § 3583(e)(3) and the Sentencing Guidelines focus the inquiry on the

defendant's conduct and not the fact of conviction in another court, the evidence submitted in the

supervised release hearing must establish that Akers committed a federal or state crime and,

where applicable, that his conduct fell within one of the grades in U.S.S.G. 7C1.1. The Second Circuit recently highlighted the importance of conduct in affirming revocation for commission of a criminal offense, even though the violation report relied on a since-repealed New York Penal Law § 221.05, which imposed a fine for possession of marijuana. *United States v. Francis*, 77 F.4th 66, 71 (2d Cir. 2023). In that case, the Second Circuit held that "the applicability of [mandatory condition #2] is not dependent on the defendant's being convicted, so long as the court in the revocation proceedings finds that the defendant 'committed' such a crime." *Id*. (quoting *United States v. Chatelain*, 360 F.3d 114, 124 (2d Cir. 2004). The Second Circuit confirmed the conduct-conviction distinction, as "it is the defendant's offense *conduct* alone that constitutes a supervised release violation." *Id*. (emphasis in original). Finding that the releasee's conduct constituted a federal offense, even though possession of marijuana was no longer criminalized under state law, the Second Circuit upheld the revocation. *Id*. at 73.

As evidenced in *Francis*, these provisions were written to allow revocation of supervised release without first obtaining a criminal conviction for the same conduct. *See United States v. Waller*, 616 F. App'x. 628, 629 (4th Cir. 2015) (affirming the district court's revocation of supervised release when the releasee was acquitted on criminal charges for the conduct). When revocation is based on acquitted conduct, the acquittal carries no preclusive effect. Equity demands that the text of this provision apply with equal force when favorable to a criminal defendant.

Other courts, when considering Application Note 1, have relied on only a defendant's conduct to determine the violation grade. *United States v. Jones*, 492 F. Supp. 3d 1200, 1242 (D.N.M. 2020) (considering evidence of the defendant's actual conduct even though he pled no contest to the state offense); *United States v. Abston*, 152 F. App'x. 880, 882–83 (11th Cir. 2005)

10

(same); *see also United States v. Rentas-Felix*, 235 F. Supp. 3d 366, 384 (D.P.R. 2017) ("[T]he distinction between charge, conviction, and conduct stands to define conduct as the critical element for appropriate court action in light of the imputed violation to sustain a revocation finding."); *United States v. Schwab*, 85 F.3d 326, 327 (8th Cir. 1996) (holding that the district court properly looked to the defendant's actual conduct, rather than the offense to which he pled guilty, to determine the grade of violation). The statutory text requires that this Court consider the evidence presented (including the fact of conviction) in the final revocation hearing and determine whether Akers's actual conduct violated the conditions of supervised release. Affording preclusive effect to the state court conviction is antithetical to this directive. *See* Appeal Transcript, *United States v. Davis*, 3:99-cr-50015 (W.D. Va. Oct. 14, 2014), Dkt. 70 at 4 ("it is always cleaner to have a conviction to go on. It sort of obviates the necessity of proof. But that is not written in stone. I mean, the Court can always take evidence as to whether the defendant violated the conditions or not."), *aff'd*, 606 F. App'x. 710 (4th Cir. 2015).

### 3. *Due Process Considerations*

Considerations underlying the inapplicability of collateral estoppel against a criminal defendant require that the conviction not be afforded preclusive effect. In *Parklane*, the Supreme Court noted that it "might be unfair to apply offensive collateral estoppel . . . where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." 439 U.S. at 330–31. In *Standefer*, the Supreme Court gave three reasons for refusing to apply collateral estoppel against the government in a criminal case: (1) the government is often deprived a full and fair opportunity to litigate in a criminal case (2) unevenness in admissibility of evidence in subsequent trials and (3) the public interest in accuracy and justice in criminal cases outweighs judicial economy concerns that drive

application of collateral estoppel in criminal cases. 447 U.S. at 23–25. These considerations also apply to the preclusive effect of a criminal conviction at a supervised release revocation hearing.

Akers had a full and fair opportunity[5] to litigate his criminal case, but significant procedural differences exist between a supervised release revocation and a criminal trial. A defendant's guilt is at issue in both cases, but the two are different proceedings, presided over by different judges, requiring different burdens of proof, governed by different procedural rules, between different parties, and for different purposes. The Rules of Evidence do not strictly apply in a supervised release revocation, and the defendant retains only minimal due process rights. *See* Fed. R. Evid. 1103(d)(3); Fed. R. Crim. P. 32.1. The purpose of the hearing also differs, as revocation serves as a sanction for the breach of the court's trust, not punishment for the offense conduct. In *Standefer*, the Supreme Court looked to the different applications of the exclusionary rule between different criminal defendants as evidence of the inapplicability of collateral estoppel. 447 U.S. at 23–24. The differences between the proceedings here are significantly more far-reaching.

Further, the third *Standefer* factor emphasizes that the interest in accuracy and justice in a criminal case generally outweighs the benefits of efficiency furthered by preclusion. In *Pelullo*, the Third Circuit relied upon this balancing, holding that "the liberty interest of a criminal defendant takes priority over the usual concerns for efficient judicial administration so often found in civil proceedings." 14 F.3d at 893; *see also United States v. Smith-Baltiher*, 424 F.3d 913, 920 (9th Cir. 2005) ("In federal criminal trials, the United States may not use collateral

---

[5] Akers argues that his state counsel was ineffective, and therefore he did not have a full and fair opportunity to litigate the offense in state court. Dkt. 92 at 4. Because I decide the preclusion issue on other grounds, and this claim more properly sounds in habeas corpus, I do not reach Akers's ineffective assistance of counsel allegations.

12

estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the Government bears the burden of proof beyond a reasonable doubt.") (quoting *United States v. Arnett*, 353 F.3d 765, 766 (9th Cir. 2003) (en banc) (per curiam order)). Akers had an opportunity to litigate and defend his liberty interest in state court, and that judgment requires due respect. But, in this case, the Government asks the Court to revoke Akers's supervised release and sentence him to additional period of federal incarceration, which implicates a liberty interest separate from that adjudicated in state court.

In any case, it is not clear that judicial efficiency would be served by granting the state conviction preclusive effect and excluding Akers's evidence. If Akers successfully challenged his state sentence through habeas corpus, he could then request reopening of a federal sentence based on the state conviction. *Custis v. United States*, 511 U.S. 485, 497 (1994). If this Court considers Akers's conduct, not merely the conviction, in the revocation proceeding, the revocation proceeding stands on firm ground regardless of collateral attack on the state conviction. *See Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 840 (5th Cir. 1993) (upholding parole revocation after dismissal of state charges because the Parole Board considered not only the charges, but the defendant's statements and actual conduct). In the normal course, the potential for collateral attack on a state conviction would not pose a threat to revocation. *United States v. Davis*, 606 F. App'x. 710, 711 (4th Cir. 2015) (holding that a state court conviction, although pending appeal, provides a sufficient basis for revocation). In this case, however, Akers has maintained his innocence throughout the state proceedings and seeks to provide evidence of actual innocence of the state offense. Given this unique posture, it appears prudent to consider not only the conviction, but also any additional evidence. In short, judicial efficiency is better

13

served by full consideration of the evidence now, rather than opening the door to additional proceedings after collateral attack in state court.

Finally, it is important to emphasize the narrowness of this decision. Although the state conviction does not have preclusive effect, it is alone sufficient to show a violation of the conditions of release by a preponderance of the evidence. *United States v. Harris*, 512 F. App'x. 292, 293 (4th Cir. 2013) (per curiam); *Davis*, 606 F. App'x at 711. Akers is merely entitled to present evidence in this forum to rebut the Government's evidence of a violation. District courts have wide flexibility in the administration of supervised release revocation proceedings. *See Morrissey*, 408 U.S. at 489. Admission of witness testimony and other evidence does not preclude a finding that Akers violated the conditions of release and committed the state offense.

This case deals only with the preclusive effect of a state conviction where the releasee has maintained that he is actually innocent of the offense conduct. I do not reach the preclusive effect of a state conviction following a defendant's guilty plea. Guilty pleas are presumed valid under the presumption of regularity. *United States v. Locke*, 932 F.3d 196, 199–200 (4th Cir. 2019). The presumption of regularity is a high bar, and finality carries extra weight when applied to guilty pleas. *Id*. at 200 (quoting *Custis*, 511 U.S. at 497). The need to "prevent the innocent from possible wrongful conviction" highlighted by the Third Circuit in *Pelullo* carries significantly less force when a releasee has pled guilty to the violation offense. 14 F.3d at 893. Judicial efficiency and finality are important doctrines in criminal law, as exemplified by the procedural strictures applied to habeas corpus proceedings. In this case, permitting evidence on guilt does not disturb the final, non-appealable conviction announced by the Floyd County Court. Rather, admission of such evidence fulfills this Court's duties under the Sentencing Guidelines and Rule

14

32.1 to make a determination, based on the evidence before it, as to the defendant's alleged breach of trust.

C.  Motion to Quash

A moving party may quash a subpoena *ad testificandum* only when the requesting party "has failed to offer any argument or information as to the relevance of the testimony." *United States v. Kumar*, No. 4:17-CR-5-FL-1, 2019 WL 1486365, at *4 (E.D.N.C. Apr. 3, 2019). Motions to quash are more properly suited to subpoenas *duces tecum*, because a witness may object only to specific questions or assert a claim of privilege upon appearance. 2 Wright & Miller's Federal Practice & Procedure § 274 (4th ed. 2009) (widely cited for the proposition that it is the "better practice" to require appearance, and at that point the witness may provide justification for refusing to testify); Wayne R. LaFave et al., *Defense Use of Subpoenas*, *in* 6 Criminal Procedure § 24.3(f) (5th ed. 2025). Because I find that the state conviction does not have preclusive effect, the Government fails to show that the testimony of the witnesses is irrelevant. The circumstances surrounding the obstruction of justice conviction are relevant to this Court's determination of whether Akers's conduct violated the terms of release. Therefore, the motion to quash is denied.

D.  Motion to Exclude Testimony

In the alternative, the Government asks that witness testimony be excluded under Rule 403 as duplicative, redundant, and a waste of time. Dkt. 85 at 4. The government argues that the state conviction and trial transcript should be admitted instead of witness testimony. *Id*. at 5.

As discussed above, supervised release revocation hearings are governed by Rule 32.1. Although Akers does not retain the full panoply of due process rights as he would at a criminal hearing, he has a right to present evidence and "upon request, an opportunity to question any

15

adverse witnesses, unless the judge determines that the interest of justice does not require the witnesses appear." Fed. R. Crim. P. 32.1(b)(2)(C). The right to subpoena witnesses is included in the limited rights granted by Rule 32.1. *United States v. Alston*, 311 F. App'x. 617, 618 (4th Cir. 2009). In determining whether witnesses must appear, the Court applies a balancing test weighing the releasee's interest in confronting adverse witnesses against good cause for denying confrontation. *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012). Reliability of the proffered evidence is a critical factor in the balancing test. *United States v. Ferguson*, 752 F.3d 613, 617 (4th Cir. 2014) (citing *Doswell*, 670 F.3d at 531). The Court should apply the balancing test at the revocation hearing. *See United States v. Wheeler*, 130 F.4th 406, 416 (4th Cir. 2025). The Government bears the burden of demonstrating good cause to admit hearsay evidence in lieu of witness testimony. *Ferguson*, 752 F.3d at 617 ("The existence of corroborating evidence does not relieve the government's burden of proffering a sufficient justification for the absence of the witness.").

The interest in examining witnesses depends primarily on two factors: (1) the importance of hearsay evidence to a disputed finding and (2) the nature of facts to be proven by the hearsay. *Wheeler*, 130 F.4th at 417 (citing *United States v. Comito*, 177 F.3d 1166, 1167–68 (9th Cir. 1999)). First, the conviction, which is hearsay evidence, is crucial to a disputed finding, as it is relevant to whether Akers violated the conditions of supervised release. Second, as counsel noted at the April 1 hearing, this is a "he said / he said case." Assessment of Akers's guilt will be based largely on the credibility of the witnesses. Therefore, the nature of facts to be proven bolster Akers's strong interest in live examination of witnesses.

16

The Government argues that requiring Akers's victims to testify is oppressive and unreasonable.[6] In *Wheeler*, the Fourth Circuit held that good cause is shown where "it would be 'unreasonably burdensome' to transport witnesses to the judicial forum from another state; a witness in another state cannot be found; a witness refuses to testify; or the live testimony would 'pose danger of physical harm to a government informant.'" 130 F.4th at 418 (quoting *United States v. Sutton*, 916 F.3d 1134, 1139 (8th Cir. 2019)). In this case, the witnesses live in-state, and there is no indication that they refuse to testify or cannot be located. Displeasure at confronting their threatener, without more, is insufficient to deprive Akers of his right to cross-examination. *See Ferguson*, 752 F.3d at 619. Thus, the Government fails to show good cause for exclusion of witness testimony.

## IV.    Conclusion

The Government's motion to quash witness subpoenas and exclude witness testimony (Dkt. 85) is **DENIED**. Akers's state conviction for felony obstruction of justice is admissible to show a prima facie violation of the conditions of supervised release, but Akers will have the opportunity to present evidence disputing that his conduct violated state, federal, or local law.

An appropriate Order shall follow.

Entered:  April 10, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[6] Because I find that the state conviction does not preclude presentation of evidence about the facts of the offense, the Government's arguments that the testimony would be duplicative, cumulative, and redundant are unavailing.